IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMOTHY J. CARROLL,<br><br>                Plaintiff,<br><br>        vs.<br><br>JOHN AUMAN, SS2; AMY VOLBRECHT, HIM; TRACY CULLINS, HIM; and RANDI PINKERMAN, HIM,<br><br>                Defendants. | 8:22CV164<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiff, Timothy J. Carroll ("Carroll"),[1] a non-prisoner, has been given leave to proceed in forma pauperis. The court now conducts an initial review of Carroll's Complaint (Filing 1).

## I.  APPLICABLE STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when

---

[1] Plaintiff previously was known as Timothy J. Wiley. See, e.g., Filing 29 in Case No. 8:20CV265.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.*, at 849 (internal quotation marks and citations omitted).

## II. SUMMARY OF COMPLAINT

Carroll, a civilly committed patient at the Norfolk Regional Center ("NRC"), "sue[s] [Defendant] John Auman and employees who work in NRC HIM [Health Information Management] in their individual capacity for tampering with [Carroll's] legal mail." (Filing 1, p. 7, ¶ 4.) Defendants Amy Volbrecht, Tracy Cullins, and Randi Pinkerman are HIM staff members. (Filing 1, p. 7, ¶ 11.)

Carroll complains that on April 8, 2022, "[his] treatment plan coordinator arrived at [his] unit handing [him] a copy of a text order on one of [his] 8th circuit cases," a mailing which "was opened outside [Carroll's] presence by HIM." (Filing 1, p. 7, ¶¶ 1, 2.) The envelope, which is postmarked April 7, 2022, was rubber-stamped "LEGAL MAIL - OPEN ONLY IN THE PRESENCE OF THE INMATE." (Filing 1, pp. 10-11.) Although Carroll alleges this order was entered in Court of Appeals Docket No. 21-3707 (see Filing 1, p. 7, ¶ 13), the docket sheet for that appeal does not show any order as having been entered since March 10, 2022, when the clerk granted Carroll an extension of time to file his appellant's brief. In another case, however, Court of Appeals Docket No. 21-3706, a clerk's order was entered on April 7, 2022, granting Carroll's fourth motion for an extension of time to file his appellant's brief.[2] Carroll alleges that "John Auman is the one who handed out our

---

[2] "When considering a Rule 12(b)(6) motion [for failure to state a claim upon which relief can be granted], the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by

2

mail for 4-8-22" and that "HIM conspired and opened my mail once John Auman had instructed HIM to regardless of the stamped 'only open in the presence of the inmate'." (Filing 1, p. 7, ¶¶ 3, 11.)

Carroll also complains that a case filed in this court, Case No. 8:21CV33, "was abruptly dismissed because my extension of time was supposed to be mailed out but was withheld and both the court and the defendant's copy was never mailed." (Filing 1, p. 7, ¶ 12.)

Carroll alleges that "[b]ecause of the defendants tampering with my mail, this has caused a dismissal and appeal on US District Court case 8:21CV33 a reversal on 8:20CV160 and a chilling effect when they confiscated and willingly disobeyed the law opening my legal mail outside my presence on my 8th Circuit Court case 21-3707." (Filing 1, p. 7, ¶ 13.) For relief, Carroll requests "$150,000 per defendant for punitive damages." (Filing 1, p. 5.)

### III.  DISCUSSION

Carroll indicates this is a civil rights action brought under 42 U.S.C. § 1983. (Filing 1, p. 3.) To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

NRC is a state hospital for the mentally ill, whose programs and services are administered by the Nebraska Department of Health and Human Services. *See* Neb.

---

the pleadings.") *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014); *see Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."). The court can take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id*. The court can also take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

Rev. Stat. §§ 83-101.06, 83-305. Defendants presumably are state employees who were acting under color of state law. Carroll states his claims are based on the First Amendment and the Due Process Clause. (Filing 1, p. 3.)

### A. Incoming Mail

Although involuntarily committed individuals do not forfeit their First Amendment right to receive incoming mail, that right may be limited by institutional regulations that are reasonably related to a legitimate penological or institutional interest. *Turner v. Safley,* 482 U.S. 78 (1987). Indeed, "[t]he governmental interests in running a state mental hospital are similar in material aspects to that of running a prison. Administrators have a vital interest in ensuring the safety of their staff, other patients, and of course in ensuring the patients' own safety." *Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir. 1997); *see also Revels v. Vincenz,* 382 F.3d 870, 874 (8th Cir. 2004) (although involuntarily committed patient of state hospital is not prisoner per se, his confinement is subject to same safety and security concerns as that of prisoner). *See, e.g., Herzog v. O'Niel*, No. 8:10CV313, 2012 WL 1161620, at *4 (D. Neb. Apr. 9, 2012) (physician's order directing NRC staff to screen involuntarily committed patient's incoming mail "except from advocacy attorney" did not violate patient's First Amendment rights).

The United States Supreme Court has held that an inmate's privileged mail may not be opened for inspections for contraband outside the presence of the inmate and has defined privileged mail as "mail to or from an inmate's attorney and identified as such." *Wolff v. McDonnell,* 418 U.S. 539, 574, 576-77 (1974); *see Cody v. Weber,* 256 F.3d 764, 768 (8th Cir. 2002) ("[T]his court has interpreted [*Wolff*] to stand for the proposition that mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence."); *Jensen v. Klecker,* 648 F.2d 1179, 1182 (8th Cir. 1981) ("Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner."); *see also Harrod v. Halford*, 773 F.2d 234, 235 (8th Cir. 1985) ("The purpose of opening mail in the inmate's presence is to protect his attorney/client privilege and to protect the confidentiality of other legal matters. The inmate is assured that his mail has not been read when the letters

are opened in his presence. Jailers are not required to take the extra time and effort to open mail in the inmate's presence when the mail is not confidential.").

In *Harrod*, the Eighth Circuit held that "the mere fact that a letter comes from a legal source is insufficient to indicate that it is confidential and requires special treatment." 773 F.2d at 236. The Eighth Circuit found it permissible for a correctional facility to open letters not properly marked as "confidential" as required by the facility's policy even though the letters were sent by the clerk of the district court, a district judge, a magistrate judge, the United States Department of Justice, the county corrections department, the bureau of community correctional services, and a law firm. *Id.* "The Eighth Circuit has construed *Wolff* as requiring that all attorney-client privileged mail that is opened for inspection for contraband must be done in the presence of the prisoner and not read. But … the Eighth Circuit has not gone beyond this and required that the *Wolff* procedures be employed for incoming mail from other 'legal sources.'" *Moore v. Hoeven*, No. 1:08-CV-028, 2008 WL 1902451, at *12 (D.N.D. Apr. 28, 2008) (citations omitted) (collecting cases and determining that protected legal mail is defined as privileged attorney-client correspondence).

In the present case, the mailing envelope was rubber-stamped "legal mail," but this does mean that the enclosed court order was constitutionally protected.³ As other district courts within this circuit have held, based on the Court of Appeals' restrictive interpretation of *Wolff*, such communications generally are not entitled to First Amendment protection. *Moore v. Schuetzle*, 354 F. Supp. 2d 1065, 1079 (D.N.D. 2005) (holding that correspondence from city police department and from state corrections department were not constitutionally protected "legal mail" even though treated as privileged under prison's policies), *aff'd*, 172 F. App'x 133 (8th Cir. 2006); *Moore v. Schuetzle*, 486 F. Supp. 2d 969, 987-90 (D.N.D. 2007) (holding

---

³ Even if the "legal mail" designation was made pursuant to some NRC policy or procedure, this would not bestow any constitutional protection. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy [of not opening properly marked legal mail outside the presence of the inmate]. Gardner must prove that Howard violated his constitutional right to receive mail or to access the courts.").

that letters to prison inmate from clerk of district court, district court judge, and United States magistrate judge, not marked confidential, were not "legal mail" afforded constitutional protection), *aff'd as modified*, 289 F. App'x 962 (8th Cir. 2008); *Hari v. Smith*, No. 20-CV-1455 (ECT/TNL), 2022 WL 1122940, at *25 (D. Minn. Jan. 31, 2022) (mail received from the courts "is not protected legal mail"). *See also Fernandez v. North Dakota*, No. 1:12-CV-161, 2014 WL 7409550, at *15-16 n. 12 (D.N.D. Nov. 3, 2014) ("[M]atters of public record, i.e., copies of documents filed in [inmate's] civil rights action … are simply not protected legal mail."), *subsequently aff'd*, 612 F. App'x 407 (8th Cir. 2015); *Moore v. Rowley*, 126 F. App'x 759, 760 (8th Cir. 2005) (per curiam) (prisoner did not have a constitutional right to have his bankruptcy petition leave the penal institution without first being inspected). In sum, the transmission of the clerk's order granting Carroll additional time for briefing on appeal is not "legal mail" that was required to be opened in his presence under the First Amendment.[4]

### B. Outgoing Mail

The United States Constitution guarantees prisoners a right to access the courts. *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). A delay in mailing legal papers can amount to a constitutional violation when it infringes a prisoner's right of access to the courts. *Beers v. Hopkins*, No. 8:98CV470, 2002 WL 412122, at *3 (D. Neb. Mar. 18, 2002) (citing *Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2002)).

"The right to access the courts emanates from several constitutional provisions, including the First Amendment right to petition the government for a redress of grievances and the Fourteenth Amendment right to due process of law. In cases drawing upon the First Amendment, the plaintiff must show that the defendants acted with some intentional motivation to restrict their access to the

---

[4] The question of whether a particular piece of correspondence is "legal mail" is a question of law. *Moore v. Schuetzle*, 354 F. Supp. 2d at 1078 (citing *Sallier v. Brooks,* 343 F.3d 868, 873 (6th Cir.2003) ("The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court, not one of fact that can be submitted to a jury.")).

courts. In contrast, a plaintiff alleging a violation of the Fourteenth Amendment need only show that the government official's conduct was so egregious that it shocks the conscience. In the context of denial-of-access claims, an official meets this standard if his actions were subjectively reckless, meaning he exhibited deliberate indifference toward the individual's rights." *Id.* (quoting *West v. Brankel*, No. 13-3237-CV-S-DGK, 2015 WL 225465, at *10 (W.D. Mo. Jan. 16, 2015) (internal quotations and citations omitted)).

Carroll only alleges that Case No. 8:21CV33 "was abruptly dismissed because my extension of time [motion] was supposed to be mailed out but was withheld and both the court and the defendant's copy was never mailed." (Filing 1, p. 7, ¶ 12.) There are no facts alleged to show that the failure to mail the motion or service copies was anything other than inadvertent. Mere negligence is not sufficient to establish a claim for denial of access to the courts. *Muhammad v. Frakes*, No. 4:21CV3096, 2021 WL 4263447, at *2 (D. Neb. Sept. 20, 2021), *aff'd*, No. 21-3679, 2021 WL 8445909 (8th Cir. Dec. 13, 2021). Indeed, it is not even alleged that Defendants were responsible for the alleged failure. To establish the personal liability of Defendants, Carroll must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018).

To prevail on an access-to-courts claim, a prisoner must also establish that he sustained "actual injury." *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001). To demonstrate "actual injury," the prisoner must show "that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* (quoting *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)). "[A]n isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner*, 109 F.3d at 431 (internal quotation marks omitted).

Carroll alleges that Case No. 8:21CV33 was "abruptly dismissed" because his request for extension of time was not mailed to the court, but this allegation is contrary to the facts shown by the court's own records. Carroll's complaint in that case was actually dismissed by the Honorable John M. Gerrard in a Memorandum and Order entered on November 8, 2021 (Filing 55 in Case No. 8:21CV33), when

he granted the defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. On the court's own motion, however, Carroll was given until December 1, 2021, to file an amended complaint. (*Ibid*.) This filing deadline was subsequently extended to December 30, 2021, on Carroll's motion. (See Filings 56 & 57 in Case No. 8:21CV33.) On January 10, 2022, after Carroll failed to meet this extended deadline, Judge Gerrard entered judgment. (See Filings 58 & 59 in Case No. 8:21CV33.)

On January 19, 2022, after the case was dismissed, Carroll filed a "motion for reversal," claiming he had sent a motion for another extension of time on December 27, 2021, which "apparently got lost in the mail," and requesting an additional 14 days to amend. (Case No. 8:21CV33, Filing 60 at 1.) Judge Gerrard denied this motion in all respects on February 8, 2022, because Carroll had not provided any explanation "for why he hadn't been able to complete the task [of filing an amended complaint] on or before December 30, 2021," and, moreover, he still had not filed an amended complaint. (Case No. 8:21CV33, Filing 61 at 2.) To state a claim upon which relief could be granted, and to avoid dismissal, Carroll "simply had to specifically identify the defendant or defendants who allegedly knew he was at risk of harm and failed to protect him." (Case No. 8:21CV33, Filing 61 at 1.) Judge Gerrard therefore found "no basis to wait further for an amended complaint that the Court had no obligation to solicit in the first instance." (Case No. 8:21CV33, Filing 61 at 2.) A motion for reconsideration was subsequently denied for the same reasons. (See Filings 63 and 62 in Case No. 8:21CV33.) The case is currently on appeal.

When conducting an initial review pursuant to 28 U.S.C. § 1915(e)(2)(B), the court does not have to accept as true any allegations of fact in the complaint which contradicts facts of which the court may take judicial notice. *Sowemimo v. Thomas*, No. CIV.A. 09-639, 2009 WL 3806737, at *3 (W.D. Pa. Nov. 13, 2009) (citing *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)). The court is not required to accept Carroll's allegation that his case was dismissed because a motion for extension of time was not mailed. "A court may grant a party's timely motion for an extension upon a showing of good cause, *see* Fed. R. Civ. P. 6(b)(1)(A)," and "[t]he primary measure of good cause is the movant's diligence in attempting to meet deadlines." *Albright as Next Friend of Doe v. Mountain Home*

*Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) (internal quotation and citation omitted). Carroll does not allege any facts showing there was good cause for granting him a second extension of time for filing an amended complaint, nor was any such showing made in either the "motion for reversal" or the "motion for reconsideration" that he filed in Case No. 8:21CV33.

## IV. CONCLUSION

Carroll's Complaint fails to state a plausible claim against any Defendant for allegedly violating his rights under the First and Fourteenth Amendments, and therefore is subject to pre-service dismissal under 28 U.S.C. § 1915(e)(2)(B).

IT IS ORDERED:

1. Plaintiff's Complaint (Filing 1) is dismissed without prejudice.

2. On the court's own motion, Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice. Plaintiff is warned that a motion for extension of time will not be granted without a proper showing of good cause.

3. In the event Plaintiff files an amended complaint, failure to consolidate all claims into one document may result in abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, prior pleadings.

4. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event Plaintiff files an amended complaint.

5. The Clerk of the Court is directed to set a pro se case management deadline using the following text: **June 30, 2022**—amended complaint due.

9

6. The court must be kept informed of Plaintiff's current address at all times while this case is pending. Plaintiff's failure to keep the court so informed may result in dismissal of the case without further notice.

Dated this 31st day of May, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge